PAYSON STREET NEIGHBORHOOD CLUB ET AL *v.*
BOARD OF LIQUOR LICENSE COMMISSIONERS
FOR BALTIMORE CITY ET AL.

[No. 107, October Term, 1953.]

*Decided March 25, 1954.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*W. A. C. Hughes, Jr.,* and *Juanita Jackson Mitchell* for the appellants on motion to dismiss.

Submitted on motion to dismiss by *Edward D. E. Rollins, Attorney General,* and *Ambrose T. Hartman, Assistant Attorney General,* for the Board of Liquor License Commissioners for Baltimore City.

Submitted on motion to dismiss by *Hilary W. Gans* for H. Gloria Carter.

DELAPLAINE, J., delivered the opinion of the Court.

This proceeding arose from an application filed with the Board of Liquor License Commissioners for Baltimore City by H. Gloria Carter, operator of Carter's Tavern at 1000 Payson Street in Baltimore, for a renewal of her Class D beer, wine and liquor license with special amusement license for the year beginning May 1, 1953.

Under the State Alcoholic Beverages Act, Code 1951, Art. 2B, sec. 65, the holder of an expiring license is required to file an application for the renewal of such license with the official authorized to approve the same not less than 30 days nor more than 60 days before the first day of May in each year. Upon the filing of the application and the payment of the annual fee, the holder is entitled to a new license for another year; provided, however, that if a protest signed by not less than ten residents or real estate owners of the precinct or voting district in which the licensed place of business is located is filed against the granting of such new license at least 30 days before the expiration of the license, no license by way of renewal shall be approved without a hearing before such official.

The Board of Liquor License Commissioners for Baltimore City received a protest against the granting of a renewal of Mrs. Carter's license, and the Board set the protest for a public hearing on April 13, 1953.

Six protestants appeared at the hearing. The applicant did not appear, but her husband appeared in her behalf. No complaint was made against the manner in which the tavern had been operated. The protestants based their protest upon Section 57 (d) of the Alcoholic Beverages Act, which provided, prior to June 1, 1953, as follows:

"In Baltimore City if it shall appear that more than fifty per centum in numbers of the owners of real or leasehold property situated within two hundred feet of the place of busi-

ness for which application is made are opposed to the granting of the license, then the application shall not be approved, and the license applied for shall be refused."

The attorney for the applicant questioned the validity of some of the affidavits of the protestants. He recalled that there had been a protest against the renewal of Mrs. Carter's license in 1952, and it was discovered that some of the affidavits were not proper, because the protestants did not appear before a notary public, and the Board thereupon found that less than 50 per cent of the property holders had duly protested.

The attorney for the protestants, while admitting that some mistakes had been made in 1952, told the Board: "We have combed these petitions and affidavits very thoroughly and have weeded out all of those who do not have full title. * * * The errors last year were not intentional, and we have tried to comply with the letter and the spirit of the law."

The protestants, after showing by the records of the Bureau of Plans and Surveys of the Department of Public Works of Baltimore that there were 61 property owners within a radius of 200 feet of Carter's Tavern, presented the affidavits of 38 of them who were opposed to the renewal of the license. Since it appeared that over 62 per cent of the owners of real or leasehold property situated within 200 feet of the tavern were opposed to the renewal of the license, the Board disapproved the application and refused to grant the license.

After the hearing an attorney for the applicant contended that the Board had not been properly construing the words "owners of real or leasehold property" in Section 57(d) in determining the number of property owners opposed to the granting of a license. He argued that such owners should include not only the leaseholders under 99-year leases, but also the holders of the ground rents or reversionary interests because they hold the fee simple title. He asked the Board to withhold its

decision until it obtained an opinion from the Attorney General.

In a letter dated June 4, 1953, Attorney General Rollins expressed the opinion that the owners of a property should be allowed only one vote, such as had been the practice of the Board with reference to property owned by husband and wife. In consequence of that opinion, the Board was convinced that more than 50 per cent of the property owners within 200 feet of Carter's Tavern were opposed to the renewal of the license.

In the meantime, however, the Maryland Legislature had amended the law regulating the renewal of licenses in the City of Baltimore by adding a proviso that Section 57(d) "shall not apply to any application for license by way of renewal or by way of transfer for the same premises." Laws 1953, ch. 671. The Act was approved by Governor McKeldin on April 27 and took effect on June 1.

The applicant's attorney called the Board's attention to the Act of 1953, and argued that, since the Board had not rendered a decision on the application prior to June 1, it was bound by it and was obligated to renew the license, since Section 57(d) no longer applied to the application.

The Board, however, felt that it was bound by the law as it stood on April 13, the date of the hearing, and on May 1, the beginning of the license year. Accordingly on June 4 the Board refused to renew the license on the ground that more than 50 per cent of the property owners within 200 feet of the tavern had opposed the renewal.

On June 15, 1953, Mrs. Carter filed a petition in the Baltimore City Court against the Board of Liquor License Commissioners for Baltimore City, alleging that she was aggrieved by its action on her application. On August 1 the Payson Street Neighborhood Club and a number of individual protestants filed a petition to intervene as defendants.

The case was submitted to Judge Moser, sitting in the Baltimore City Court, on August 11, and on September 16 he held that the Act of 1953 did not affect any existing substantial rights, but affected only matters of procedure and remedies, and therefore he reversed the action of the Board, since it assigned no reason for its action except the objection of a certain number of property owners. He accordingly entered judgment in favor of plaintiff for costs of suit, the costs to be paid by the Board only. The intervening defendants appealed here from that judgment.

The Board and the applicant filed a motion to dismiss the appeal on the ground that there was no right of appeal from the Baltimore City Court to the Court of Appeals.

The Alcoholic Beverages Act, which was originally enacted as an emergency measure and approved on December 5, 1933, provided that appeals could be taken from the local licensing boards to the State License Bureau. Laws 1933, Extra Sess., ch. 2. In 1941 the Legislature authorized appeals to the Circuit Court for Montgomery County, Laws 1941, ch. 438, and the Circuit Court for Baltimore County. Laws 1941, ch. 686.

In 1943 the Legislature abolished the right of appeal in Baltimore City and most of the Counties to the State License Bureau, and authorized any licensee or applicant for a license to appeal to the Circuit Court of the County, or in the City of Baltimore to the Baltimore City Court. The Act now contains the following provision:

"The decision of the court thus given shall be final and effective at once. No further appeal shall lie to the Court of Appeals of the State, nor shall there be any other remedy by which the local board's decision may be reviewed in court, either by way of mandamus, injunction, certiorari or otherwise. However, if any judge of the Circuit Court of any county, or the Baltimore City Court, shall in any case finally decide a point of law at variance with any decision

'previously rendered by any other Judge of the State on the same question, an appeal may be taken from the decision rendered to the Court of Appeals of Maryland. * * *" Laws 1943, ch. 714, Laws 1947, chs. 501, 774, Code 1951, art. 2B, sec. 166(e).

The Act thus furnishes a definite guide to the right of appeal from the Board to the Court. A decision by the Circuit Court, or by the Baltimore City Court, even though clearly erroneous, is final and not reviewable by the Court of Appeals unless it is shown that the Judge decided a point of law at variance with a decision previously rendered by any other Judge of this State on the same question. The Act expressly states that the Court of Appeals shall decide only the question of law involved in such an appeal and shall not pass upon any question of fact. *Brashears v. Lindenbaum*, 189 Md. 619, 56 A. 2d 844; *Gianforte v. Board of License Com'rs for Baltimore City*, 190 Md. 492, 58 A. 2d 902.

Of course, the obligation rests on the appellants to show that the trial Judge decided a point of law at variance with a decision previously rendered by any other Judge on the same question. In the instant case appellants were unable to cite any previous decision at variance with Judge Moser's decision. It follows that appellants have no right of appeal to the Court of Appeals. It is, therefore, not within the scope of our authority to decide whether or not Judge Moser decided the question of law correctly.

Appellants urged that the decision of the Court below deprives them of vested property rights in violation of the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States. In this case it is unnecessary to consider whether the Court of Appeals, in a case where appellants had actually obtained vested property rights, would have the authority to decide under section 166 (e) whether they had been deprived of such rights. Here appellants had not obtained any vested property rights. The foundation of

the power of the Legislature to regulate the sale of alcoholic beverages and the grant of licenses therefor is, of course, the police power. The Legislature originally exercised that power by giving a veto on the renewal of a license to 50 per cent of the property owners within 200 feet of a place of business. There was nothing to prevent the Legislature from subsequently exercising its power in a different way. When the Legislature authorized 50 per cent of the property owners within a certain area to bar the renewal of a liquor license for a place of business within that area, it did not confer any vested property rights, and the repeal of that provision, whether construed retroactively or not, did not deny due process.

*Appeal dismissed, with costs.*